IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

CHERYL G.,

               Plaintiff,

    vs.

MARTIN O'MALLEY, Commissioner
of Social Security,

             Defendant.

8:22-CV-0394

MEMORANDUM AND ORDER

This matter is before the Court on the denial, initially and upon reconsideration, of plaintiff Cheryl G.'s application for disability insurance benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, 1381 *et seq.* The Court has considered the parties' filings and the administrative record. For the reasons discussed below, the Court finds that the Commissioner's decision was supported by substantial evidence, so the plaintiff's motion for reversal (filing 15) will be denied, and the Commissioner's motion for an order affirming his decision (filing 19) will be granted.

## I. PROCEDURAL HISTORY

On August 24, 2020, the plaintiff filed a Title II and Title XVI application for supplemental security income and disability insurance benefits alleging disability beginning June 30, 2020. Filing 11-2 at 12. Her claim was denied initially in May 2021 and upon reconsideration in June 2021. Filing 11-2 at 12. The plaintiff requested a hearing before an administrative law judge (ALJ), which occurred on November 17, 2021. Filing 11-2 at 12. Following that hearing, the ALJ found the plaintiff was not disabled as defined by 20 C.F.R. §§

404.1520(f) and 416.920(f), so she was not entitled to benefits under the Social Security Act. Filing 11-2 at 46. The Appeals Council of the Social Security Administration denied the plaintiff's request for review of the ALJ's decision. Filing 11-2 at 2. Accordingly, the plaintiff seeks judicial review of the ALJ's decision as the final decision of the Commissioner under 42 U.S.C. § 405(g). Filing 1.

## II. FACTUAL BACKGROUND

The plaintiff's claim for disability is based on alleged chronic pain, obesity, and mental health disorders including anxiety, depression, and insomnia. *See* filing 11-2 at 63-64; filing 11-6 at 110. She had been dealing with these medical issues for several years, but she reported that her pain worsened in the months leading up to and after the alleged onset date of disability. *See* filing 11-6 at 110; filing 12-1 at 82; filing 12-1 at 103; filing 12-1 at 176.

### 1. WORK, FAMILY, AND MEDICAL HISTORY

The plaintiff resides in an apartment in Nebraska City, Nebraska, with her two adopted grandchildren and an emotional support dog. Filing 11-5 at 2, 5; filing 11-2 at 68; filing 11-6 at 74; filing 12-2 at 161. She was born in 1967, she has been divorced twice, and she is currently unmarried. Filing 11-5 at 2, 5; filing 12-1 at 90-91. She has three adult children she sees regularly. *See* filing 12-1 at 91.

The plaintiff completed her G.E.D. in 1986 in Lincoln, Nebraska. Filing 11-6 at 7. She most recently worked full time at a Taco Bell, from September 2016 until May 2017. *See* filing 11-6 at 8; filing 11-2 at 68. She worked at a Casey's convenience store from 2005 until 2015, as a sales clerk. Her job duties sometimes included working in the Casey's kitchen. *See* filing 11-6 at 8; filing 11-2 at 68. She has not worked since May 2017. *See* filing 11-6 at 8.

The plaintiff is and was prescribed various medications to manage her asthma, allergies, anxiety, depression, back pain, sleep apnea, obesity, insomnia, hypertension, and joint pain. *See* filing 12-1 at 304. Throughout the relevant period, her doctors increased her buspirone dosage (filing 12-1 at 233, 235), discontinued Lasix and other medications for edema (filing 12-1 at 306), and tried different medications and dosages to help the plaintiff manage her chronic pain (*e.g.*, filing 12-1 at 316). The two providers she saw regularly throughout the relevant period were her chiropractor, Jeffrey Cumro, D.C., and someone to manage her mental health care, Lindsey Teten, APRN-NP.

The plaintiff's chiropractor helped her with the pain in her neck, shoulder, and lower back. *See, e.g.*, filing 12-1 at 153, 150, 147, 192. Cumro treated her roughly twice per week from July until October 2020, and then the plaintiff reduced the treatments to once per week. *See* filing 12-1 at 125-153, 192-223. Cumro reported that her prognosis was good after each session, and the plaintiff reported after each session that her pain had improved. The plaintiff sometimes reported that, since the previous session, her pain had worsened. *See, e.g.,* filing 12-1 at 150, 195, 211.

The plaintiff had monthly-ish telehealth appointments with Teten to manage her medications for her depression, anxiety, and insomnia. *See* filing 12-1 at 230-264. Teten prescribed phentermine, tizanidine, venlafaxine, eszopiclone, and buspirone. *E.g.*, filing 12-1 at 227. Buspirone was prescribed on May 11, 2020, to help the plaintiff with her reported increased anxiety and sleep issues. Filing 12-1 at 246. Teten increased the buspirone dosage in August 2020 because the plaintiff reported she struggled to be on task, and she was having a hard time getting things accomplished. Filing 12-1 at 233, 235. Teten regularly reported that the plaintiff's anxiety and depression were well-managed and her mood was congruent. *E.g.*, filing 12-1 at 262, 257, 253, 239, 240. Teten also regularly reported that the plaintiff was alert, cooperative, had good eye contact and

hygiene, and that she was goal-directed, organized, and logical. *E.g.*, filing 12-1 at 262, 257, 253, 246, 240, 233, 230. In the earlier appointments in the record, Teten reported that the plaintiff's mood was dysthymic (filing 12-1 at 262, 257, 246), and the later-dated records indicate the plaintiff was euthymic (filing 12-1 at 252, 240, 234, 230).

The plaintiff also sought other care, mostly from the CHI health clinic, to help manage her pain and other impairments. The plaintiff contends that her chronic pain was noticeably worse as of the alleged onset date of disability, June 30, 2020. She went to the clinic "for a weight check" on July 1, 2020. Filing 12-1 at 299. She elected to stop taking phentermine because she did not feel like it was working. *Id*. The plaintiff reported that she had been exercising daily. *Id*. On August 5, 2020, the plaintiff returned to the clinic—she was exercising more and she had lost five pounds since her prior visit. *Id*. She was instructed to continue working on her diet and exercise.

The plaintiff visited Dr. David S. Diamant, a neurosurgeon, on August 19, 2020, for an evaluation of her chronic back pain, including tests and bloodwork. Filing 12-1 at 103. Dr. Diamant opined that he would not recommend future surgical intervention or injections to help her back, considering her history of injections with no relief. He also advised the plaintiff that working would not hurt her, and that she should "persevere as best as she can, be as functionally active as she can be—she will not cause harm to herself in all likelihood." Filing 12-1 at 105. Based on the lab results and the plaintiff's blood work, Dr. Diamant referred the plaintiff to a rheumatologist, Dr. Joseph Nahas. *See* filing 12-1 at 106-08; filing 12-1 at 110-112; filing 12-1 at 100.

The plaintiff returned to the clinic on September 4, 2020, to manage her medication and to review some lab results from her visit with Dr. Diamant. Filing 12-1 at 300. The nurse indicated that the plaintiff's mood and affect were normal, and her recent and remote memory were intact. Filing 12-1 at 305. On October

4

12, 2020, the plaintiff came to the clinic again because of "ongoing and worsening pain . . . in her whole body." Filing 12-1 at 306. The plaintiff was prescribed Celebrex, but the nurse indicated, "There really is not any more I can do until she sees the rheumatologist and hopefully they may have some more answers for her as far as her pain goes." Filing 12-1 at 311.

In December 2020, the plaintiff went to the clinic with "increasing pain," and she did not think she could stand the pain until her appointment with Dr. Nahas. Filing 12-1 at 312. The plaintiff reported that the medications and appointments with her chiropractor were not helping. *Id.*; *but see* filing 12-1 at 192. She was prescribed pain relievers "to use very sparingly once daily for her pain until her appointment with" Dr. Nahas. Filing 12-1 at 316.

The plaintiff saw Dr. Nahas on January 14, 2021, where he evaluated her hands, lumbar spine, and sacroiliac joints. Filing 12-2 at 200-04. Her hands were swollen with mild osteoarthritis. Her lumbar spine MRI indicated anterolisthesis at L5-S1 and degenerative changes. The sacroiliac joints MRI indicated mild bilateral sacroiliac joint osteoarthritis, and thoracolumbar scoliosis and moderate spondylosis. Filing 12-2 at 204. On February 23, 2021, she had an MRI of her pelvis, which indicated "slight degenerative change involving both SI joints," but no convincing evidence for sacrolitis, and no SI joint fusion. Filing 12-2 at 35. Dr. Nahas recommended physical therapy to help the plaintiff with her pain, which began on February 26, 2021. Filing 12-2 at 55.

At her annual exam in March 2021, Kristin Miller, APRN, reported that the plaintiff was "doing well overall." Filing 12-1 at 317. The plaintiff said her joint pain was tolerable with medications, and she was doing physical therapy. *Id.* The plaintiff was reported to have "mild depression." Filing 12-1 at 319. The plaintiff was encouraged "to follow a heart healthy diet and increase her activity as tolerated." Filing 12-1 at 324. The plaintiff was "doing well," and her mood was "controlled with current medications." *Id.*

5

The plaintiff saw Dr. Aaron Bott, M.D., an orthopedist, in August 2021, for increased pain in her shoulder. Filing 12-2 at 164. Dr. Bott ordered an MRI, which indicated that the plaintiff had "biceps tendinopathy, a possible HAGL lesion, possible SLAP tear, [and] possible subscapularis tear." Filing 12-2 at 168. Dr. Bott recommended arthroscopic surgery to alleviate the plaintiff's pain. *Id.* The surgery happened in October 2021, just a few weeks before her hearing in front of the ALJ. *See* filing 12-2 at 186.

She had a follow-up appointment with Dr. Nahas on August 12, 2021. The plaintiff reported that she was not able to tolerate physical therapy for her back pain because of her anxiety. Filing 12-2 at 154. Dr. Nahas told her that weight loss would help alleviate her pain, through gastric bypass surgery, healthy dietary changes, walking, or low impact exercise. Filing 12-2 at 155.

The plaintiff went to the Nebraska Pain Institute in Nebraska City on September 24, 2021, regarding her chronic pain in her neck, back, and bilateral lower extremities. Filing 12-2 at 145. The provider and the plaintiff "agreed to proceed with a course of physical therapy," to be followed with injections. The plaintiff was also prescribed pain medication. Filing 12-2 at 149.

### 2. MEDICAL OPINIONS

#### (a) Provider Opinions

Cumro, the plaintiff's chiropractor, submitted a letter reflecting his opinion on the plaintiff's work restrictions. He opined that "long-term sitting, standing or physical labor are going to be difficult for her to perform without an exacerbation of her conditions," but that the plaintiff could be limited to four hours of work activity daily. Filing 12-1 at 176. He further opined that "[m]ental limitations are not a concern" he had with the plaintiff. Filing 12-1 at 176.

Teten, the plaintiff's mental health care provider, provided a letter explaining that the plaintiff had moderate major depressive disorder, insomnia disorder, and generalized anxiety disorder. She further opined that the plaintiff:

> has struggled with self-care related to low mood, low motivation, and low drive. [The plaintiff] has notable negative and intrusive thoughts. She often will ruminate on negative interactions and experiences. She struggles with appropriate social interactions at times. She can be overly emotional at inappropriate times. She can appear depressed and disheveled at times.

Filing 12-2 at 192.

Teten opined that the plaintiff was "unable to meet competitive standards" regarding making simple work-related decisions, completing a normal workday, performing at a consistent pace, responding appropriately to changes in a routine work setting, dealing with normal work stress, and understanding, remembering, and carrying out detailed instructions. Filing 12-2 at 194-95.

Teten wrote that plaintiff was "seriously limited" regarding remembering work-like procedures, understanding and remembering instructions, maintaining attendance, sustaining a routine, asking questions, accepting instructions, and dealing with work stress. *Id*. Teten thought the plaintiff could carry out short and simple instructions, maintain attention for two-hour segments, work in coordination with or proximity to others, get along with co-workers and peers, be aware of normal hazards, and set realistic goals or make plans independently. *Id*. Teten is the only medical professional in the record who treated the plaintiff for her mental health. *See* filing 12-1 at 256.

## (b) State Agency Consultant Opinions

At the initial level of her disability claim, the state agency consultant, Lee Branham, Ph.D., concluded that the plaintiff had the following severe medically

7

determinable impairments: osteoarthrosis, depressive disorder, obesity, hypertension, asthma, curvature of spine, anxiety disorder, and disorder of the skeletal spine. Filing 11-3 at 7. Dr. Branham determined that the plaintiff had no limitation in both her ability to understand, remember, or apply information, and her ability to adapt or manage herself; a mild limitation in her ability to concentrate, persist, or maintain pace; and a moderate limitation in her ability to interact with others. Filing 11-3 at 8. Dr. Branham reviewed Teten's treatment notes in determining the plaintiff's mental limitations. *See* filing 11-3 at 6-7, 8.

At the reconsideration level, Patricia Newman, Ph.D., found the same severe medically determinable impairments as Dr. Branham, with one exception: Dr. Newman found that the plaintiff's depression and anxiety were non-severe. Filing 11-3 at 29. Dr. Newman found that the plaintiff only had a mild limitation in her ability to interact with others and concentrate, persist, or maintain pace, and she had no limitations in her ability to understand, remember, or apply information, or her ability to adapt or manage herself. *Id.* Dr. Newman noted that, based on the plaintiff's medical record, the plaintiff was "able to care for herself and her two adopted grandchildren, drive, shop in store and online, handle finances, follow instructions, get along with authority, and handle stress." *Id.* And while the plaintiff reported that her mental health had declined, Dr. Newman determined that statement was not consistent with the records which "simply note a bit of anxiety and decrease in sociability." *Id.*

### 3. ADMINISTRATIVE HEARING

After the state agency denied the plaintiff's claim for disability, the plaintiff requested a hearing before an ALJ. The hearing was held on November 17, 2021, with the plaintiff, her attorney, and a vocational expert, Julie Svec. Filing 11-2 at 12. The record before the ALJ at the hearing contained all the relevant medical and work history. Filing 11-2 at 62. The vocational expert classified the plaintiff's

past work at Casey's as a sales clerk (light and semiskilled) and at Taco Bell as a fast-food worker (light and unskilled). Filing 11-2 at 82. The vocational expert then answered questions about hypothetical work limitations with the plaintiff's age, education, and work history.

First, the ALJ asked about a hypothetical individual capable of performing a full range of light work, but no ability to climb ropes, ladders, or scaffolds; ability to occasionally climb ramps and stairs, balance, kneel, stoop, crouch, and crawl; and no concentrated exposure to temperature extremes, vibration, pulmonary irritants such as gases, fumes, or chemicals, or hazards such as unprotected heights. The vocational expert testified that the individual would be able to perform both of the plaintiff's past positions, as well as other jobs in the national economy, including a pricer, information clerk, and verification clerk. Filing 11-2 at 83.

The ALJ then asked what jobs would be available to an individual who, in addition to above limitations, was limited to performing simple, repetitive, routine tasks and instructions, and have no more than occasional changes in the work settings. The vocational expert testified that the sales clerk job would not be available, but the other jobs (fast food worker, pricer, information clerk, and verification clerk) would remain. Filing 11-2 at 84.

### 4. SEQUENTIAL ANALYSIS AND ALJ FINDINGS

#### (a) Steps One and Two

On December 13, 2021, the ALJ found that the plaintiff was not disabled and she was not entitled to benefits. Filing 11-2 at 22. To determine whether a claimant qualifies for disability benefits, an ALJ performs a five-step sequential analysis of the claim. 20 C.F.R. § 404.1520(a)(4). At the first step, the claimant has the burden to establish that she has not engaged in substantial gainful activity since her alleged disability onset date. *Gonzales v. Barnhart*, 465 F.3d

9

890, 894 (8th Cir. 2006); § 404.1520(a)(4)(i). Regarding step one, the ALJ found that the plaintiff met the insured status requirement of the Social Security Act through December 31, 2021, and that the plaintiff had not engaged in substantial gainful activity since June 30, 2020, the plaintiff's alleged onset date. Filing 11-2 at 14.

At step two, the medical severity of the claimant's impairment is considered. § 404.1520(a)(4)(ii). The claimant has the burden to prove a medically determinable physical or mental impairment or combination of impairments that significantly limits her physical or mental ability to perform basic work activity. *Gonzales*, 465 F.3d at 894. The ALJ found the following severe medically determinable impairments: degenerative disc disease of the lumbar and thoracic spine; asthma; and obesity. Filing 11-2 at 14. The ALJ found the following non-severe impairments: hypertension, stroke with right-side issues, systemic autoimmune disease, and pain in her hips, knees, hands, and feet. Filing 11-2 at 15. The ALJ further found that the medical record did not support a diagnosis of an autoimmune disease or any severe visual impairment.

And, the ALJ found that the plaintiff's medically determinable medical impairments of depressive disorder, anxiety disorder, and sleep disorder, considered singly and in combination, were non-severe. Filing 12-1 at 15. Four "broad functional areas" are used to evaluate these limitations: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." § 404.1520a(c)(3). These areas are also referred to as the "paragraph B criteria," which are contained in 20 C.F.R. Part 404, Subpart P, Appx. 1, § 12.00 *et seq.* The first three criteria are rated using a five-point scale of none, mild, moderate, marked, and extreme. § 404.1520a(c)(4). The fourth criterion, episodes of decompensation, is rated as: none, one or two, three, four or more. *Id.* The ALJ concluded that the plaintiff had no limitation regarding her capacity to understand, remember, or apply information, and a mild limitation in

her ability to interact with others, her ability to concentrate, persist, or maintain pace, and her capacity to adapt or manage herself. Filing 11-2 at 16.

The ALJ considered the opinions of the state agency psychological consultants, Dr. Branham and Dr. Newman, and of one of the plaintiff's doctors, Lindsey Teten, APRN-NP. The ALJ found the opinions of Dr. Branham and Teten to be not persuasive, while Dr. Newman's opinion was persuasive.

The ALJ determined that Dr. Branham's opinion that the plaintiff had severe impairments related to her mental health "was not fully supported" and was not consistent with the other evidence of record. Filing 11-2 at 17. He considered Dr. Newman's opinion to be persuasive even though there was "minimal analysis." Filing 11-2 at 17; *see* filing 11-3 at 29, 37. The ALJ determined that Dr. Newman's opinion contained sufficient supporting analysis and was consistent with the other evidence of record; particularly, the reports that the plaintiff "routinely exhibits normal mental functioning at office visits" and she admits "that her psychological symptoms are well controlled." *Id.*

Teten's opinion of the plaintiff's psychological functioning was that the plaintiff was "unable to meet competitive standards" or had "no useful ability to function in a number of areas, including making simple work-related decision[s], performing at a consistent pace, and using public transportation." Filing 11-2 at 17; *see* filing 12-2 at 192-197. However, the ALJ determined that Teten's opinion was not adequately explained, and was contrary both to Teten's treatment notes and the plaintiff's own statements regarding her mental health. Filing 11-2 at 17. For these reasons, the ALJ found Teten's opinion not persuasive. *Id.*

### (b) Step Three

At step three, the medical severity of the claimant's impairments is further considered. § 404.1520(a)(4)(iii). If the claimant's impairments meet or equal a presumptively disabling impairment listed in the regulations, the analysis ends,

11

and the claimant is automatically found disabled and entitled to benefits. *Gonzales*, 465 F.3d at 894. The ALJ found that the plaintiff's impairments, considered singly or in combination, did not meet or equal any specific listing. Filing 11-2 at 15-16.

The ALJ determined that the record did not support that the plaintiff's degenerative disc disease reflected "any compromise of a nerve root in the lumbar or cervical spine, need for an assistive device for walking, or an inability to use both upper extremities" to complete work-related activities. Filing 11-2 at 17. The record lacked imaging or surgical findings "indicating compromise of the cauda equine with lumbar spinal stenosis," so the plaintiff's degenerative disc disease did not meet listing 1.15. Filing 11-2 at 17.

The plaintiff's asthma also did not meet a disabling impairment in the regulations because she did not meet the pulmonary function testing or hospitalization requirements. And, the ALJ considered SSR 19-2 in determining that the plaintiff's obesity, alone or in combination with her other severe and non-severe impairments, was not medically equal to a listing. Filing 11-2 at 18.

### (c) Steps Four and Five

At step four, the claimant has the burden to prove that she lacks the RFC to perform her past relevant work. *Gonzales*, 465 F.3d at 894; §§ 416.920(a)(4)(iv) & (f), 404.1520(a)(4)(iv) & (f). If the claimant can still do her past relevant work, she will be found to be not disabled; otherwise, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to prove, considering the claimant's RFC, age, education, and work experience, that there are other jobs in the national economy that the claimant can perform. *Gonzales*, 465 F.3d at 894; §§ 416.920(a)(4)(v) & (g), 404.1520(a)(4)(v) & (g).

At step four, the ALJ found that the plaintiff had the residual functional capacity to perform light work as defined in § 404.1567(b), except "she cannot

climb ladders, ropes, or scaffolds; she can occasionally climb ramps and stairs, balance, kneel, stoop, crouch, and crawl; and she cannot have concentrated exposure to temperature extremes, vibration, pulmonary irritants, such as fumes, gases, and chemicals, and hazards, such as unprotected heights." Filing 11-2 at 18. At step five, the ALJ determined that the plaintiff could perform past relevant work as a sales clerk, based on testimony by the vocational expert and after he compared the plaintiff's restrictions to the requirements of the position. Filing 11-2 at 20-21. And, the ALJ determined that, based on the plaintiff's age, education, work experience, and residual functional capacity, the plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Filing 11-2 at 20.

In assessing the plaintiff's capacity to perform past relevant work, the ALJ followed a two-step process to first determine whether any underlying medical condition, physical or mental, could cause the plaintiff's pain or symptoms, and second, evaluate the extent to which the underlying condition limits the plaintiff's work-related activities. The ALJ considered the intensity, persistence, and other limiting factors of the underlying conditions. The ALJ determined that the plaintiff's physical impairments may cause some of her symptoms, but the plaintiff's statements regarding the intensity, persistence, and limiting effects her symptoms were not consistent with the medical record.

In determining the plaintiff's residual functional capacity and her ability to perform past work and other work, the ALJ considered the persuasiveness of the medical opinions in the record and whether the opinions were consistent with the medical record. The state agency medical consultant opinions regarding the plaintiff's work limitations were persuasive because they were supported by appropriate analysis of the medical evidence, and the opinions were consistent with the other evidence of record. Filing 11-2 at 20. The ALJ further found the

13

plaintiff's chiropractor's opinion about the plaintiff's work restrictions to be not persuasive.

Specifically, the ALJ noted inconsistencies in the plaintiff's reported symptoms, such as pain and wheezing, and the objective medical record, which reflected that the plaintiff has "a normal gait, full sensation, normal strength, and full range of motion," and she "is noted to have normal respiratory function." Filing 11-2 at 19. Further, while the plaintiff stated that she needed a cane to walk, she was "not observed to use a cane at office visits." Filing 11-2 at 20.

The ALJ determined that the chiropractor's opinion that the plaintiff "would not be able to work more than four hours per day and would be significantly limited in her ability to lift" was not supported by the chiropractor's notes or methodology, and was not consistent with the medical record. Filing 11-2 at 20. The ALJ also noted that chiropractors "are not considered acceptable medical sources." Filing 11-2 at 20. And the ALJ considered reports by the plaintiff's daughters, which he found to be "generally inconsistent with the evidence as a whole." Filing 11-2 at 20.

Based on the plaintiff's RFC and the vocational expert's testimony, the ALJ determined that the plaintiff could perform past relevant work as a sales clerk. Filing 11-2 at 20-21. And, also relying on the vocational expert's testimony, the ALJ determined that the plaintiff can perform other jobs that exist in significant numbers in the national economy because she had the RFC to perform the full range of light work. Filing 11-2 at 21. Based on these findings, the ALJ determined that the plaintiff was not disabled and she was not entitled to benefits. Filing 11-2 at 22.

## III. STANDARD OF REVIEW

The Court reviews a denial of benefits by the Commissioner for errors of law and to determine whether the denial is supported by substantial evidence on

the record as a whole. *Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012) (citing 42 U.S.C. § 405(g)). Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion. *Id*. The Court considers the entire administrative record—the evidence that detracts from the decision, as well as the evidence that supports it—but the evidence is not reweighed. *See id*. Instead, the Court will disturb the ALJ's decision only if it falls outside the available "zone of choice.*" Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021). And the ALJ's decision is not outside the zone of choice simply because this Court might have reached a different conclusion as the initial finder of fact. *Id*. Rather, if the record contains evidence that a reasonable person might accept as adequate to support the ALJ's conclusion, the Court may not reverse—even if it would reach a different conclusion, or merely because there is also evidence that might support a contrary outcome. *See id*.; *Byes*, 687 F.3d at 915.

The Court reviews for substance over form: an arguable deficiency in opinion-writing technique does not require the Court to set aside an administrative finding when that deficiency had no bearing on the outcome. *Buckner v. Astrue*, 646 F.3d 549, 559 (8th Cir. 2011). And the Court defers to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011).

## IV. DISCUSSION

The plaintiff generally alleges that the ALJ's finding of not disabled is neither supported by substantial evidence nor consistent with legal and regulatory standards. In particular, the plaintiff argues that the ALJ erred by determining the plaintiff's mental impairments were non-severe, and by failing to provide appropriate weight to the plaintiff's treating medical opinions and the plaintiff's own reports of her limitations. Further, the plaintiff makes a

procedural argument that this case must be remanded to a new ALJ because the ALJ who issued the finding was not properly appointed. Filing 16 at 2-3.

### 1. MENTAL IMPAIRMENTS NON-SEVERE

The plaintiff first argues that the ALJ erred by finding the plaintiff's mental impairments to be nonsevere. Filing 16 at 15. The plaintiff attributes this error to the ALJ's alleged failure to fully develop the record. *See* filing 16 at 18; *Combs v. Berryhill*, 878 F.3d 642, 646-47 (8th Cir. 2017) (quoting *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010)). The plaintiff argues that because the state consultant opinions of Dr. Branham and Dr. Newman were at odds, the ALJ should have ordered a consultative examination or called for a medical expert to "break the tie." Filing 16 at 18.

According to the plaintiff, because the ALJ rejected Teten and Dr. Branham's opinions of the plaintiff's mental limitations, the ALJ should have further developed the record "instead of drawing his own inferences." Filing 16 at 19. However, the ALJ did not draw his own inferences; he weighed each opinion, evaluated its persuasiveness, and compared each opinion to the record as a whole. *See* filing 11-2 at 16-17; § 404.1520c(a). An ALJ is not required to seek additional clarifying statements "unless a crucial issue is undeveloped." *Combs*, 878 F.3d at 647 (quoting *Vossen*, 612 F.3d at 1016). There is no indication that the opinions regarding the plaintiff's mental impairment were undeveloped; rather, the plaintiff is effectively asking this Court to reweigh the evidence before the ALJ. The Court declines to do so. *Byes*, 687 F.3d at 915.

The ALJ's assessment of the persuasiveness and consistency of the various medical opinions is supported by substantial evidence. The ALJ reviewed Teten's treatment notes and the plaintiff's self-reported activities, and he reviewed the level of analysis present in the state consultant opinions. The ALJ determined that the plaintiff could manage herself and she had normal memory and intact

insight and judgment. The record supports that the plaintiff socialized several times per week, was noted to be cooperative, and that she can drive, watch television, read, and play games on her phone. The record also supports that the plaintiff exhibited intact attention and concentration, and she typically exhibited a normal mood and affect and appropriate dress. Filing 11-2 at 16; *e.g.,* filing 12-2 at 68, 85, 131, 193, 234; filing 11-6 at 49, 51, 76, 78. The ALJ's determinations are supported by the medical record and the weight he afforded the medical opinions. Therefore, the ALJ's conclusion that the plaintiff's mental impairments are not severe is supported by the record as a whole. Filing 11-2 at 16.

## 2. LINDSEY TETEN, APRN

The plaintiff next argues that the ALJ did not sufficiently explain why he found Teten's opinion about the plaintiff's work limitations to be not persuasive. Teten opined that the plaintiff was "unable to meet competitive standards" in several functional areas, and that she was "seriously limited" in several others. Filing 12-2 at 194-95.

The ALJ determined that Teten's opinion about the plaintiff's work limitations were inconsistent with Teten's treatment notes. This determination is supported by substantial evidence. Teten regularly reported that the plaintiff's anxiety and depression were well-managed, and the plaintiff was alert, cooperative, had good eye contact and hygiene, and that she was goal-directed, organized, and logical. *E.g.*, filing 12-1 at 262, 257, 253, 239, 240, 262, 257, 253, 246, 240, 233, 230. On a few occasions, Teten reported that the plaintiff was dysthymic or appeared to be in a depressed or anxious mood; however, the majority of the time, Teten's notes reflected that the plaintiff was not concerningly encumbered by her mental health impairments. The plaintiff's interactions with other medical professionals further supports this finding. *See, e.g.,* filing 12-1 at 305.

The ALJ also determined that Teten's opinion was not consistent "other evidence of record, including the objective medical findings throughout and the claimant's own statements regarding her mental symptoms." Filing 11-2 at 17. Again, this determination is supported by substantial evidence. The plaintiff did not allege mental health impairments in her request for disability. *See* filing 11-3 at 6; filing 11-6 at 6. Other doctors indicated that the plaintiff's mood was controlled with medication. *E.g.*, filing 12-1 at 317. And, as explained above, the state agency psychological consultants did not think the plaintiff's limitations were as severe as provided by Teten.

The Court agrees with the ALJ that Teten's opinion regarding the plaintiff's limitations is hard to square with her treatment notes. *Compare*, *e.g.*, filing 12-1 at 240, *with* filing 12-2 at 192. The ALJ adequately explained why he did not find Teten's opinion persuasive as required under § 404.1520c(b)(2), and his determination is supported by substantial evidence.

### 3. JEFFREY CUMRO, DC

Next, the plaintiff argues that the ALJ did not articulate sufficient reasons for finding her chiropractor's statement on her work restrictions and her RFC not persuasive. Filing 16 at 24. The chiropractor, Cumro, stated that the plaintiff was not able to work more than four hours per day and was significantly limited in her ability to life. Filing 11-2 at 20; Filing 12-1 at 176. The ALJ noted that chiropractors "are not considered acceptable medical sources." Filing 11-2 at 20. The ALJ determined Cumro's statement was "not supported by an accompanying narrative" or his treatment notes, nor was it "consistent with the other evidence, including the objective medical findings, the other treatment notes, and the opinions of the state agency medical consultants." Filing 11-2 at 20.

Whether a medical opinion comes from an "acceptable medical source" as defined in § 404.1502 is not relevant when evaluating a claimant's RFC. *See* §

18

416.920c(a); *Jeannie M. B. v. Kijakazi*, No. 21-cv-0438, 2022 WL 2835067, at *6 (D. Minn. July 20, 2022); *compare id.*, *with* § 416.927 (for claims filed before March 27, 2017, only acceptable medical sources may provide medical opinions regarding physical and mental work restrictions). The only step of the five-step sequential analysis where the "acceptable medical source" distinction is relevant is at step two, when the ALJ is determining whether a medically determinable impairment exists. *See Jeannie M. B.*, 2022 WL 2835067, at *6. So, the ALJ's remark that the chiropractor is not an acceptable medical source has no relevance or importance in determining the plaintiff's RFC. Rather, the ALJ must follow the regulations outlined in § 404.1520c(b) in considering a medical opinion. As required by § 404.1520c(b)(2), the ALJ explained how he considered the supportability and consistency factors for Cumro's medical opinions. He wrote that Cumro's opinion was not supported by an accompanying narrative or his treatment notes.

The ALJ's description of the supportability and consistency of Cumro's opinion is supported by sufficient evidence. Over the course of several months, Cumro reported that the plaintiff's prognosis was good. *E.g.*, filing 12-1 at 207; 196; 193. While his opinion letter, dated November 11, 2020, stated that the plaintiff "has really struggled to make progress," filing 12-1 at 176, his treatment notes from November 10, 2020, indicated that the plaintiff's pain had improved since the last visit, and she "felt better after the treatment and . . . experienced an increase in range of motion in muscle strength and a decrease in pain since Chiropractic care began." Filing 12-1 at 192-93. Even though the ALJ misapplied the fact that Cumro was not an acceptable medical source, his statement was ultimately harmless because the ALJ properly articulated sufficient reasons for finding the plaintiff's chiropractor's opinion regarding work restrictions to be not persuasive, and his determination is supported by substantial evidence. *See Jeannie M. B.*, 2022 WL 2835067, at *6.

19

### 4. CREDIBILITY OF PLAINTIFF

The plaintiff also asserts that the ALJ did not provide reasons for finding the plaintiff herself not credible. The Court will defer to an ALJ's credibility determination if it is supported by good reasons and substantial evidence. *Turpin v. Colvin*, 750 F.3d 989, 993 (8th Cir. 2014). An ALJ may discredit a claimant's complaints if they are inconsistent with the evidence as a whole. *Id.* (quoting *Clark v. Chater*, 75 F.3d 414, 417 (8th Cir. 1996)).

The ALJ noted that the plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of" her medically determinable impairments "are not entirely consistent with the medical evidence and other evidence in the record." Filing 11-2 at 19. The ALJ noted several inconsistencies between the plaintiff's statements about her impairments and the record as a whole. The ALJ noted that the plaintiff reported that she used a cane when walking, but she was "not observed to use a cane at office visits." Filing 11-2 at 18, 20. She "reported that her pain was ongoing and was present in most of her body, but reported some improvement in function and pain relief with chiropractic care." Filing 11-2 at 19. And while the plaintiff "has demonstrated some tenderness . . . she has a normal gait, full sensation, normal strength, and full range of motion." *Id.*

The ALJ did not err in finding the plaintiff not credible. He provided good reasons for his credibility determination, which this Court finds is supported by substantial evidence. *See Turpin*, 750 F.3d at 993.

### 5. FEDERAL VACANCIES REFORM ACT

The plaintiff's final argument is that the ALJ in this case, Chris Yokus, was not constitutionally appointed, necessitating a remand with a new ALJ. Filing 16 at 29. The plaintiff argues that Yokus's appointment was deficient under the Federal Vacancies Reform Act, 5 U.S.C. § 3345 *et seq*., because Acting Commissioner Nancy Berryhill was not properly serving when she ratified the

appointment of various ALJs, including Yokus. But in *Dahle v. Kijakazi*, 62 F.4th 424 (8th Cir. 2023), the Eighth Circuit Court of Appeals unequivocally rejected that argument. 62 F.4th at 429. The plaintiff acknowledges *Dahle* controls this Court's analysis. Filing 16 at 3 n.1. So, the plaintiff's argument must fail.

Accordingly,

IT IS ORDERED:

1.    The plaintiff's motion for reversal of the Commissioner's final decision (filing 15) is denied.

2.    The Commissioner's motion to affirm the Commissioner's filing decision (filing 19) is granted.

3.    The plaintiff's complaint is dismissed.

4.    A separate judgment will be entered.

Dated this 1st day of March, 2024.

BY THE COURT:

*John M. Gerrard*
John M. Gerrard
Senior United States District Judge

21